UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | |
| --- | --- | --- |
| | * | CASE NO. 18-mj-099 |
| VERSUS | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| SANDRA LUTER | * | |

ORDER AND REASONS

Defendant Sandra Luter moves to dismiss the criminal complaint against her with prejudice (Rec. Doc. 21), arguing that the government violated the Speedy Trial Act. At the hearing on the motion on May 16, 2019, the court ordered that the motion was granted and that written reasons would follow. For the following reasons, the Motion is GRANTED; the criminal complaint against Ms. Luter is dismissed without prejudice.

Background

A criminal complaint was filed against Ms. Luter on July 23, 2018, asserting that Ms. Luter started a fire causing damage to a property receiving federal financial assistance in violation of 18 U.S.C. § 844(f)(1). Ms. Luter was taken into federal custody and made her initial appearance on July 24, 2018. A detention hearing was scheduled for July 25, 2018, but on that date it was continued to July 30, 2018, at the request of Ms. Luter's counsel. At the July 30, 2018, detention hearing, Ms. Luter was ordered to be detained and remanded to the custody of the U.S. Marshal. On August 21, 2018, the government filed a motion for extension of time to indict or file a bill of information. That motion was granted on August 22, 2018, in an order wherein the court found that because the parties were engaging in ongoing negotiations in an attempt to resolve the matter promptly without the need for a trial or presentation to a grand jury, the ends of justice served by

1

granting the requested extension outweighed the best interest of the public and the defendant and further "pursuant to Title 18, United States Code, Section 3161(h)(7)(B)(i), that the failure to grant the requested continuance in this case would likely make a continuation of this proceeding impossible or could result in a miscarriage of justice." The government was granted until September 20, 2018, to file a bill of information or indictment.

On September 21, 2018, the government filed a motion for psychiatric examination to determine Ms. Luter's competence to stand trial. The government filed an amended motion for psychiatric examination reflecting the defendant's consent on September 24, 2018. The motion was granted on September 25, 2018.

In the Eastern District of Louisiana, typically, when an order requiring a psychiatric exam is issued by the judge, two certified copies are hand delivered by the clerk's office to the United States Marshal's Service ("USMS"), where they are stamped received at an intake desk. This is the procedure relied upon by the USMS to trigger the transportation process, the first step of which is to send the order to the Bureau of Prisons ("BOP") through an electronic system, which prompts the BOP to search for an appropriate facility, find an available bed, and designate a facility for the defendant. The court also sends electronic notice to the USMS that an order has been entered, along with electronic notice of every order and minute entry filed in every criminal matter. Nothing highlights for the USMS which electronic items are mere notifications and which require action. Each electronic document would have to be open and reviewed, a process for which the USMS lacks the personnel. Instead, the USMS relies on the hand delivery/stamped receipt process.

In this case, and for reasons unknown, after this Court's order was issued September 25, 2018, no certified copies were delivered to the USMS. In December 2018, counsel for the

government and for the defendant began to inquire into why Ms. Luter had not yet been transported for the ordered mental evaluation. At that time, they learned that the USMS had not received the order. The USMS learned of the order on December 18, 2018.[1] When the USMS requested that the BOP designate the location to which Luter should be transported, it was discovered that the Court's order did not describe a facility where the psychological and psychiatric examination could take place. On or about December 20, 2018, Agency Counsel for the BOP requested that the Order be revised to require only a psychological examination, and that a suitable medical psychological facility not be required. On January 15, 2019, the court issued a new order requiring a psychiatric examination without a requirement that it take place at a suitable medical psychiatric facility. Certified copies were delivered to the USMS pursuant to the typical process. Mr. Luter arrived at the Federal Medical Center ("FMC"), Carswell on January 29, 2019.

Meanwhile, on January 10, 2019, Ms. Luter filed the present motion to dismiss the complaint based on a violation of the Speedy Trial Act. The government filed its opposition on February 1, 2019. The matter was taken under submission on February 13, 2019. Supplemental briefing was ordered by the Court and filed by the parties on February 28, 2019. A hearing was held on May 17, 2019.

Law and Analysis

1. *The Speedy Trial Act*

The Speedy Trial Act (the "Act") requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If no indictment or information is filed within that period as extended by the

---

[1] See Aff. of Brian Aust, Rec. Doc. 29-1.

Act, the charge contained in the complaint must be dismissed. Id. §3162(a)(1). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." Id.

The Act provides that certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed." Id. § 3161(h)(1). Relevant here are the exclusion for "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant," id. §3161(h)(1)(A), and the exclusion for "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization." Id. §3161(h)(1)(F). The latter exclusion contains the following caveat: "any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." Id. Such unreasonable delay is not excluded absent an extraordinary event or circumstance to rebut the presumption. See United States v. Castle, 906 F.2d 134, 137-38 (5th Cir. 1990).

For example, in Castle, the United States Court of Appeals for the Fifth Circuit considered whether an indictment should be dismissed where 186 days had passed between the defendant's initial appearance and his trial. Id. at 136. The Act required that the trial be conducted within 70 days of the later of the defendant's indictment or initial appearance, subject to the same exclusions discussed above. Id. Thirty-four days were excludable pursuant to an exception for delays resulting from the filing of pre-trial motions. Id. at 137. And there were 90 days between the order for psychiatric examination and the date of the competency hearing. Id. However, the entire 90

4

days could not be excluded because, the court of appeals explained, the transportation exclusion only applied to the first ten of the 22 days between the date of the order directing the defendant's psychiatric examination to the time of his arrival at the medical facility. Id. The remaining 12 days were presumed unreasonable. Id. The district court had held the presumption of unreasonableness rebutted because it found the delay resulted from a "budgetary crunch due to the Gramm-Rudman bill" and that the Marshal's office had only two planes to take prisoners from city to city. Id. at 136. The Fifth Circuit reversed, finding that the record did not support a finding that the delay was caused by the Gramm-Rudman bill, noting that while the airlift system used by the Marshal's office "may be a system required by budgetary constraints," this did not explain the 12 day delay between the date of the order, on which date the Marshal "sent a teletype to the Bureau of Prisons in New Orleans requesting a designation for the defendant," and the day on which the Marshal's office, having not received a response, called the BOP to find out where to send the defendant. Id. at 135-37. The Fifth Circuit noted that "[t]he Marshal's Service will always face budgetary constraints," and explained that prisoners nonetheless have Speedy Trial rights. Id. at 137. The Fifth Circuit held that the presumption of unreasonableness cannot be rebutted by a showing of diligent effort. Id.

Ms. Luter cites United States v. Taylor, where the United States Court of Appeals for the Ninth Circuit similarly rejected the government's argument that the Marshal's office's desire to "effect economical transportation of prisoners in large groups" could rebut the presumption of unreasonableness. 821 F.2d 1377, 1384–85 (9th Cir. 1987), rev'd on other grounds, 487 U.S. 326 (1988). She also cites several other cases from other circuits holding that any time over ten days spent to transport a defendant to the place of psychiatric examination is presumptively unreasonable and should not be excluded. E.g., United States v. Turner, 602 F.3d 778, 783 (6th

5

Cir. 2010); United States v. Noone, 913 F.2d 20, 25–26 (1st Cir. 1990); United States v. McGhee, 532 F.3d 733, 738 (8th Cir. 2008). Like the Fifth Circuit in Castle, those cases make clear that the transportation exclusion at §3161(h)(1)(F) and not the exclusion for proceedings to determine mental competence at §3161(h)(1)(A) applies to transportation of a defendant to the place of mental examination.

But the government points to other cases holding that all time between the filing of a motion for a psychiatric examination to determine competency until the conclusion of the hearing to determine competency was excluded from the Speedy Trial clock whether or not the delay was reasonable. United States v. Vasquez, 918 F.2d 329, 333 (2d Cir. 1990); see United States v. Murphy,[2] 241 F.3d 447, 455 (6th Cir. 2001) (rejecting defendant's transportation exclusion argument because the defendant had no evidence of how long transportation had taken and observing that "every other circuit that has addressed the issue has concluded that time associated with mental competency examinations are excluded from the Speedy Trial clock"); United States v. Tewid, 86 F. App'x 224, 225 (9th Cir. 2003) (unpublished) (holding that delay in transporting the defendant to his psychological examination "was still excludable because it was separately attributable to a delay pertaining to proceedings associated with determining the mental competency of the defendant and resolving motions pertaining thereto"). For example, in Vasquez, there was a nearly 10-month delay between the defendant's application for a psychiatric examination and the date when the court received the report evaluating the defendant's

---

[2] Of note, the Sixth Circuit subsequently rejected a broad interpretation of Murphy. In the Turner case cited by the defendants, the Sixth Circuit explained that it had since "determined that the relevant language in Murphy was dictum, holding instead that any 'delay in transporting a defendant to a mental competency examination beyond the ten day limit imposed by § 3161(h)(1)(F) is presumptively unreasonable, and in the absence of rebutting evidence to explain the additional delay, this extra time is not excludable.'" Turner, 602 F.3d at 782 (quoting United States v. Tinklenberg, 579 F.3d 589, 596 (6th Cir. 2009)).

6

competency. 918 F.2d at 333. It had taken nearly eight months from the time the court ordered an examination until the defendant arrived at the facility where the examination would take place. Id. The court rejected the defendant's argument that time in excess of 10 days was unreasonable under the transportation exclusion, holding instead that because the delays complained of "arose from proceedings to determine his competency and were prior to the conclusion of the hearing thereon, they must be excluded from the calculation of the speedy trial clock whether or not they are reasonable." Id.

Additionally, the government submits that this case is unlike Castle because the delay here was not due to budgetary constraints. Instead, the government argues that because the Marshal's office did not have notice of the order, the exclusion for transportation delays was not triggered and the exclusion for delays resulting from proceedings to determine mental competency applies to the entire period. For example, in United States v. Yazzie, the United States District Court of the District of Arizona considered a similar scenario. No. CR-04-1210-PCT-DGC, 2006 WL 2772636, at *1 (D. Ariz. Sept. 25, 2006). The court ordered the defendant be transported to FMC Springfield on June 17, 2005, but the courtroom deputy clerk inadvertently failed to endorse the order for transmission to the Marshal's office. Id. The Marshal's office had no record of receiving the order. Id. On September 26, 2005, defense counsel inquired with the Marshal's office about the status of defendant's competency evaluation. Id. The defendant arrived at the medical facility on October 6, 2005. Id. The court distinguished cases like those discussed above, noting that they considered delays "in the actual transport of defendants" which "clearly came within § 3161(h)(1)(H)," while the case before it involved a delay that did not occur during transport. Id. at *5. Citing Turner, the court noted that the legislative history indicated that the "rule grew out of a Congressional desire that marshals not delay the transport of prisoners for economic reasons, such

7

as waiting for more prisoners to be assembled before incurring the cost of moving them." Id. The court observed that the provision was not aimed "at clerical errors that occur during competency proceedings." Id. Thus, the court found that the transportation exclusion of § 3161(h)(1)(H) was inapplicable and that instead, the entire period was excluded under §3161(h)(1)(A).

Ms. Luter argues that the government's interpretation of §3161(h)(1)(H) too narrowly construes the word "transport" when the statute makes clear that the 10-day period beings with the issuance of the "order of removal or an order directing such transportation." Further, Ms. Luter points out that the Yazzie analysis has been rejected by other district courts. For example, in United States v. Bauer, the order directing a mental examination to determine the defendant's competency was not delivered to the USMS. 286 F. Supp. 2d 31, 34 (D.D.C. 2003). The court found that the presumption of unreasonableness would not be rebutted because there was "no explanation for [the order] not traveling from the courtroom . . . to the office of the United States Marshal." Id. the court explained that "[a]n inexplicable failure to comply with a court order cannot be described as reasonable." Id. Similarly, in United States v. Lewis, the order directing a psychiatric examination of the defendant was not delivered to the USMS through an inadvertent clerical error. 484 F. Supp. 2d 380, 382–83 (W.D. Pa. 2007). When the error was discovered 35 days later, a certified copy was provided to the USMS. Id. The defendant did not arrive at the facility for examination until 33 days later. Id. In calculating whether this delay was excludable, the court applied the transportation exclusion (which at that time appeared at §3161(h)(1)(H)). Id. Noting the statutory language directing the period of transportation begins on the date of the order directing such transportation, the court rejected the government's position that the travel clock began to run when the USMS was provided a certified copy of the order. Id. at 388 n. 4. Counting from the day of the order, it found 53 non-excludable days by excluding four intervening weekend days in addition

8

to the ten explicitly excludable days.[3] Ultimately, however, the court denied the defendant's motion to dismiss because the total amount of non-excludable days did not violate the Speedy Trial Act. Id.

   2. *Analysis*

Ms. Luter was taken into federal custody on July 24, 2018. Twenty-eight days later on August 21, 2018, the court granted the government's request for additional time to indict or file a bill of information giving the government until September 20, 2018 to do so. Ms. Luter submits that at the time the psychiatric examination was ordered, the Speedy Trial Act had already been violated. Indeed, it was not until one day after the extension period expired on September 21, 2018, that the government moved for a psychiatric examination. Thus, even in September, the deadline to indict or file an information under the Speedy Trial Act had been exceeded by one day.

The parties agree that the time period from the day the motion was filed on September 21, 2019 through September 25, 2019, the day the order was issued is excludable under 18 U.S.C. §3161(h)(1)(A) as a delay resulting from a proceeding to determine the mental competency of the defendant.

The crux of Ms. Luter's argument is that the delay between September 25, 2018, and the date on which she ultimately arrived at the facility for her psychiatric examination violated the Speedy Trial Act. The government argues that the reasoning in Yazzie applies here because, due to a clerical error at the courthouse, the USMS did not receive a copy of the September 25, 2018 order. Unlike in Castle, it insists, the delay was not due to budgetary constraints at the USMS. Ms. Luter submits that the Yazzie interpretation ignores the plain language of the statute which triggers

---

[3] In so holding, the court cited cases excluding weekends and legal holidays by reference to Federal Code of Criminal Procedure 45(a), which provided at the time that in computing time periods less than 11 days, Saturdays, Sundays, and legal holidays should be excluded. This part of Rule 45(a) was removed in the 2009 amendment and now such days are included in the computation of time expressed in days.

the 10-day transportation period when the order issued, not when the USMS receives notice. The Lewis case she cites supports her interpretation that the transportation time period begins on the date of the order, even if the court failed to deliver the order to the USMS. It appears neither the Fifth Circuit nor any district court in the Fifth Circuit has addressed this issue. The court finds it unnecessary to resolve the issue here because even if the time between September 25, 2018, and the date on which the USMS received a court order directing the transport of Ms. Luter for psychiatric examination on January 15, 2019 was excluded, the delays following the January 15, 2019, order violate the Speedy Trial Act.

On January 15, 2019, the undersigned once again issued an order directing Ms. Luter's psychiatric examination. There is no dispute that certified copies of this order were provided to the USMS. But Ms. Luter did not arrive at FMC Carswell until fourteen days later on January 29, 2019. Only ten of those transportation days are excludable under §3161(h)(1)(F). The remaining four are presumed unreasonable. The government was given an opportunity to explain why the entire fourteen-day period should be excluded. The government does not argue that the presumption of unreasonableness was rebutted by some extraordinary circumstance. Instead, the government seems to argue that the Yazzie reasoning applies to the entire period of September 25, 2018 through January 29, 2019, because of the intervening clerical error, even though that error was remedied on January 15, 2019. The court finds no support for this reasoning in Yazzie, even if that precedent were applicable. The Yazzie court only had to address the delay due to the court's failure to deliver the order to the USMS because the defendant arrived at the facility 10 days after the USMS finally received notice of the order.

Here, by the time of the first order, the time to indict had already been surpassed by one day. Even if the delay between September 25, 2018, and the January 15, 2019, is excludable, the

four non-excludable days between January 15, 2019, and January 29, 2019, bring the total to five days beyond the time required by the Speedy Trial Act. Accordingly, the criminal complaint against Ms. Luter must be dismissed.

The court now turns to whether the complaint should be dismissed with or without prejudice. The court must consider the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Although Ms. Luter requests a dismissal with prejudice, she does not address the factors. The court agrees with the government that a dismissal without prejudice is appropriate here. Ms. Luter is charged with a serious offense of malicious damage to federal property by means of arson. The delay in excess of the period provided by the Speedy Trial Act was relatively short—as little as five days if the delay due to the court's clerical error is excluded, and at most 126 days if it is not. Importantly, the delays were inadvertent, not malicious, and there is no indication the government would have obtained a tactical advantage as a result. Under these circumstances, the court finds that the administration of justice is best served by a dismissal without prejudice.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss the criminal complaint is GRANTED. The complaint against Ms. Luter is dismissed without prejudice.

New Orleans, Louisiana, this 17th day of May, 2019.

                                                              Janis van Meerveld
                                                            United States Magistrate Judge